NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

DEC 7 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND and BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND, Plaintiffs-counter-defendants-Appellees, v. QUAD/GRAPHICS, INC., Defendant-counter-plaintiff-Appellant. | No.   17-55667 D.C. Nos. 2:16-cv-03391-ODW-AFM 2:16-cv-03418-ODW-AFM MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted October 10, 2018
Pasadena, California

Before:  HURWITZ and OWENS, Circuit Judges, and PRESNELL,[**] District Judge.

The issue for decision is whether Quad/Graphics, Inc. ("Quad") partially

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Gregory A. Presnell, United States District Judge for the Middle District of Florida, sitting by designation.

withdrew from the GCIU-Employer Retirement Fund ("the Fund") in 2010, after employees at Quad's Versailles, Kentucky, facility voted to decertify a collective bargaining agreement ("CBA"). An arbitrator found that Quad had not withdrawn, but on review, the district court disagreed. We have jurisdiction of Quad's appeal from the district court judgment under 28 U.S.C. § 1291. Like the district court, we must presume the arbitrator's factual findings are correct but review his conclusions of law de novo. *See* 29 U.S.C. § 1401(c); *CMSH Co. v. Carpenters Tr. Fund for N. Cal.*, 963 F.2d 238, 239–40 (9th Cir. 1992). We affirm the district court's decision.[1]

1. An employer partially withdraws from a multiemployer pension plan when it "permanently ceases to have an obligation to contribute under one or more but fewer than all collective bargaining agreements under which the employer has been obligated to contribute." 29 U.S.C. § 1385(b)(2)(A)(i); *see id.* § 1385(a)(2). The district court correctly held that Quad partially withdrew from the Fund in 2010. The Versailles CBA "became void prospectively as of the decertification of" the union as the employee's bargaining representative in December 2010, extinguishing Quad's ongoing obligations to contribute to the Fund on behalf of Versailles employees. *See Sheet Metal Workers' Int'l Ass'n v. W. Coast Sheet Metal Co.*, 954 F.2d 1506, 1509 (9th Cir. 1992).

---

[1]    In a separately filed opinion, we today also affirm the district court's judgment concerning the sequence of calculations to be applied in determining withdrawal liability.

2. The Versailles CBA did not explicitly extend Quad's contribution obligation past the union's decertification. *See id.* ("A contract to contribute to a trust fund of a Union with which [the employer] has no ongoing collective bargaining relationship makes no sense."). Rather, the CBA states only that Quad "will contribute monthly . . . for each . . . shift worked or paid for under this Agreement." It does not provide for contributions for any payments for work performed after decertification. That Quad did not pay the contribution incurred because of shifts worked in December 2010 until after the following January 1 does not mean it had ongoing obligations under the CBA. *See* 29 U.S.C. § 1385(b)(2)(A)(i).

3. Although we may consider extrinsic evidence in interpreting a CBA, *see Ariz. Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Tr. Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1517 (9th Cir. 1985), Quad has identified no evidence suggesting that the parties intended Quad to be contractually obligated to pay into the Fund after decertification. The arbitrator's factual finding that Versailles employees used some CBA-banked vacation time after the decertification vote, at most indicates that Quad believed its employees were still entitled to vacation. It does not bear on whether Quad had continuing obligations to the Fund.

**AFFIRMED.**

3

*GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, No. 17-55667

FILED

DEC 7 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

OWENS, Circuit Judge, dissenting:

I respectfully dissent. I agree with the analytical framework described: As of a union's decertification, a collective bargaining agreement (CBA) typically becomes void prospectively, but an employer's obligations could continue beyond decertification if a CBA explicitly provides. *See Sheet Metal Workers' Int'l Ass'n v. W. Coast Sheet Metal Co.*, 954 F.2d 1506, 1509 (9th Cir. 1992). I disagree, however, with the holding that this CBA did not explicitly extend the obligations of Quad/Graphics, Inc. (Quad) beyond decertification.

The CBA entitled Quad employees to earned vacation time that they could use at any point during the year. Alternatively, Quad employees could elect not to use their earned vacation time and have it paid out to them at the year's end. Quad was only contractually obligated to "pay out any unused vacation time at the end of a calendar year on or before January 31st of the following year." Therefore, even after decertification, Quad's obligation to pay for unused vacation time was continuing since it could not make this contribution until at least January 1, 2011. *See Alday v. Raytheon Co.*, 693 F.3d 772, 784-85 (9th Cir. 2012).

As such, I disagree that Quad partially withdrew from the Fund in December 2010 and would reverse the district court's decision.

1